UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID MORRIS,

                **Plaintiff,**

v.                                                      CASE NO: 8:07-CV-845-T-27TBM

PARADISE OF PORT RICHEY, INC.; *et al.*,

                **Defendants.**
_____/

## ORDER

**BEFORE THE COURT** are R.N. Fish & Son, Inc.'s Motion for Summary Judgment (Dkt. 73) and Plaintiff's Response (Dkt. 74). Upon consideration, R.N. Fish & Son, Inc.'s motion is **GRANTED**.

Plaintiff initiated this admiralty action against Port Richey Casino, Inc. ("Port Richey Casino"), R.N. Fish & Son, Inc. ("Fish & Son"), Robert N. Fish ("Robert Fish"), and the M/V Pink Lady II. (Dkt. 39). Plaintiff seeks damages for injuries he suffered on March 19, 2005 while he was serving as a seaman and deck hand aboard the casino vessel M/V Horizon's Edge. (Dkt. 39). According to Plaintiff, the accident that caused his injuries took place in the Gulf of Mexico, approximately nine miles from the Florida coastline in a shallow point commonly referred to as "the peanut." (Dkt. 39, ¶ 13). The peanut is an area customarily used by casino boats to transport passengers taken out to the casino boat by shuttle vessel. (Dkt. 39, ¶ 13; Matthews Depo., Dkt. 72-5, Matthews Depo., pp. 6-7).

It is undisputed that at the time of Plaintiff's injury, the M/V Pink Lady II was owned by Fish & Son and Robert Fish. (Dkt. 39, ¶ 12). On November 5, 2004, Robert Fish and Port Richey Casino

-1-

entered into a contract titled "Bareboat Charter" (the "Agreement") wherein Port Richey Casino agreed to lease the M/V Pink Lady II for the period of November 5, 2004 through March 5, 2005. (Dkt. 73-5).[1] In relevant part, the Agreement provides:

> (a) [Port Richey Casino] shall, at its own expense, procurement and risk throughout the Charter Period.
>     (i) have exclusive control of the Vessel;
>     (ii) be charged with full responsibility for possession, maintenance and repair, and use and operation of the Vessel;
>     (iii) maintain and preserve the Vessel and its equipment in as good and efficient condition, working order and repair as when delivered;
>     (iv) at all expense shall cause the Vessel at all times to comply with the provisions of all laws, regulations, and requirements (statutory or otherwise) . . .
>     (v) . . . shall permit the representatives of the Owner . . . at any time, on reasonable notice, to inspect the Vessel. . . . None of the inspections shall unreasonably interfere with the use of the Vessel by [Port Richey Casino]. . . .
>
> \* \* \*
>
> (c) [Port Richey Casino] shall at its own expense and by its own procurement man, victual, navigate, operate, supply, fuel and repair the vessel whenever required during the Charter period and it shall pay all charges and expenses of every kind and nature, whatsoever incidental to its use and operation of the Vessel under this Charter, including any United States and/or state taxes. . . . The Masters, officers and crews of the Vessel shall be the servants of [Port Richey Casino] for all purposes whatsoever. [Port Richey Casino] shall comply with all applicable laws and regulations regarding officers and crew.

(Dkt. 73-5, pp. 1-2).

Plaintiff alleges that at approximately 5:00 p.m. on March 19, 2005, the M/V Pink Lady II was traveling in the peanut while transporting passengers out to the M/V Royal Casino. According to Plaintiff, the M/V Pink Lady II passed the M/V Horizon's Edge at a high rate of speed generating a wake of approximately two to three feet. (Dkt. 39, ¶ 20). The wake allegedly generated by the

---

[1] Plaintiff has not objected to the authenticity of the copy of the Agreement attached as Dkt. 73-5 to Fish & Son's summary judgment motion.

M/V Pink Lady II caused the gangway to shift abruptly and strike Plaintiff approximately one inch above his kneecaps causing severe muscle damage and permanent damage to his knees. (Dkt. 39, ¶ 22). Plaintiff contends the course and position of the M/V Pink Lady II that evening was in violation of the Rules of the Nautical Road and unreasonably increased the risk of injury to persons aboard the M/V Horizon's Edge. (Dkt. 39, ¶ 21). Plaintiff alleges that as a direct result of the negligent operation and navigation of the M/V Pink Lady II, Plaintiff suffered lost wages, medical expenses, temporary and permanent disability, pain and suffering, loss of enjoyment of life, and financial hardship. (Dkt. 39).

Fish & Son moves for summary judgment on Plaintiff's negligence claim, arguing it should not be held liable for Plaintiff's injuries because the M/V Pink Lady II did not cause the wake that allegedly caused Plaintiff's injuries. (Dkt. 73, p. 2; Mario Rocamora Aff., ¶¶ 5, 6). Alternatively, Fish & Son argues it should not be held liable for Plaintiff's injuries because the M/V Pink Lady II was being operated by Port Richey Casino pursuant to a bareboat charter which released Fish & Son from liability during the charter period. (Dkt. 73, p. 3, Dkt. 73-5). Plaintiff opposes Fish & Son's motion, arguing the Agreement is not a bareboat charter because Fish & Son retained some control of the vessel during the charter period. Alternatively, Plaintiff argues that Fish & Son terminated the Agreement prior to the accident and therefore should not be relieved of its obligations and duties as the owner of the M/V Pink Lady II. (Dkt. 74).

## APPLICABLE STANDARD

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) *(internal citations omitted)*. "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

## DISCUSSION

Fish & Son moves for summary judgment on Plaintiff's negligence claim, arguing it is not liable for the injuries that Plaintiff suffered because the M/V Pink Lady II did not create the wake that injured Plaintiff on March 19, 2005. In support of its motion for summary judgment, Fish & Son submits the affidavit of Mario Rocamora, the Captain of the M/V Pink Lady II during the relevant time period. (Dkt. 73-2, Rocamora Aff.). Rocamora avers that in "March 2005, the Pink Lady II would dock and load and discharge passengers at the dock located at 7917 Bayview Street on the Pithlachascotee River right off of US 19 in the city of Port Richey." (Rocamora Aff., ¶ 4). According to Rocamora, on "March 19, 2005 the Pink Lady II departed the dock with passengers for

the M/V Royal Casino at 3:30 p.m. arriving at the M/V Royal Casino in the Gulf o[f] Mexico 12 miles off shore at 4:35 p.m." (Rocamora Aff., ¶ 5). "The Pink Lady II then departed the Royal Casino and headed back to dock on the Pithlachascotee River in Port Richey at 4:50 p.m. arriving in Port Richey at 5:45 p.m." (Rocamora Aff., ¶ 5). Thus, according to Rocamora and the vessel log submitted with his affidavit, the M/V Pink Lady II "was not headed outward bound to the Gulf en route to the Royal Casino at approximately 5:00 p.m . . . and could not have been the cause of the wake which is alleged to have jostled the vessel which Plaintiff was on board." (Rocamora Aff., ¶ 6).

Rocamora's affidavit creates a genuine issue of material fact concerning whether the M/V Pink Lady II was the vessel that caused the wake that injured Plaintiff on March 19, 2005. However, his affidavit does not entitle Fish & Son to summary judgment on Plaintiff's negligence claim. Plaintiff has submitted the testimony of Craig Matthews, the Captain of the shuttle vessel, the M/V Perseverance, which was tied up to the M/V Horizon's Edge. (Dkt. 72-5, Matthews Depo I, p. 5-7). Matthews testified that on March 19, 2005, he witnessed the M/V Pink Lady II pass the M/V Perseverance and the M/V Horizon's Edge heading toward the M/V Royal Casino. (Matthews Depo. I, pp. 22-23). According to Matthews, the M/V Pink Lady II was traveling approximately 15 knots and was "about a thousand feet away" when it created the "couple foot wake" that injured Plaintiff. (Matthews Depo. I, pp. 23-24). Matthews's testimony conflicts with Rocamora's account of the M/V Pink Lady II's whereabouts on March 19, 2005. Accordingly, summary judgment on this basis is inappropriate. *See Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006) (holding it is improper for a district court to make credibility determinations on a motion for summary judgment; "[e]ven if the district court believes that the evidence presented by one side is of doubtful veracity, it is not

proper to grant summary judgment on the basis of credibility choices").

Alternatively, Fish & Son contends it should not be held liable for Plaintiff's injuries because at the time of the incident, the M/V Pink Lady II was being operated by Port Richey Casino pursuant to a bareboat charter. According to Fish & Son, the Agreement constitutes a bareboat charter because Fish & Son relinquished possession, control, and navigation of the M/V Pink Lady II to Port Richey Casino. In turn, Fish & Son argues it cannot be held liable for the negligent operation of the vessel.

A vessel may be chartered for a single voyage or for a fixed period of time. *Agrico Chemical Company v. M/V Ben W. Martin*, 664 F.2d 85, 91 (5th Cir. 1981). "Typically in the case of conventional vessels, the owner remains in control during such charters, and provides the master and crew." *Id.* "[I]f the owner retains control, he remains liable for all damages arising out of its operation whether the charter be only for a single voyage or for a fixed time." *Id.*

In contrast, a "bareboat" or "demise" charter requires "complete transfer of possession, command, and navigation of the vessel from the owner to the charterer." *Agrico*, 664 F.2d at 91 (citing *Gaspard v. Diamond M. Drilling Co.*, 593 F.2d 605, 606 (5th Cir. 1979)). "A demise is 'tantamont to, though just short of, an outright transfer of ownership.'" *Id.* (quoting *Guzman v. Pichirilo*, 369 U.S. 698, 700 (1962); *see also Gaspard v. Diamond M. Drilling Co.*, 593 F.d 605, 606 (5th Cir. 1979) ("[a] complete transfer of possession, command, and navigation of the vessel from the owner to the charterer is required in order to constitute a demise charter"). Under a bareboat charter, the charterer, as the owner *pro hac vice* of the vessel during the term of the charter agreement, rather than the owner, is liable for any injuries or damages to third parties. *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993) ("the bareboat charterer as a demise

charterer is the owner *pro hac vice* of the vessel for the duration of the contract . . . [and] is therefore responsible in personam for the negligence of the crew and the unseaworthiness of the vessel"); *see also Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 37 (1960) (in the context of resolving a jurisdiction dispute, recognizing that "[i]f . . . a vessel under bareboat charter damages another as the result of the negligence of her crew, the vessel is liable *in rem* even though an action in personam would not lie against her owner").

Here, the parties evidenced their intent to create a bareboat charter by titling the Agreement, "Bareboat Charter." More importantly, Port Richey Casino was granted "exclusive control of the Vessel" and was "charged with full responsibility for possession, maintenance and repair, and use and operation of the Vessel." (Dkt. 73-5, p. 1). In keeping with that broad transfer of control, Port Richey Casino also assumed "at its own expense and by its own procurement" the responsibility to "man, victual, navigate, operate, supply, fuel and repair the Vessel whenever required during the Charter period and [to] pay all charges and expenses of every kind and nature, whatsoever incidental to its use and operation of the Vessel . . ." (Dkt. 73-5, p. 2).

Contrary to Plaintiff's suggestion, Fish & Son's retention of the right "at any time, on reasonable notice, to inspect the Vessel" and "the Vessel's logs" does not alone alter the character of the Agreement as a bareboat charter. *See e.g. Stolhaven Houston, Inc. v. Rachel B.*, 2008 WL 2854278 *5 (S.D. N.Y. July 18, 2008) ("a registered owner properly may retain some modicum of oversight of the vessel in a bareboat charter [ ], since a bareboat charter is, after all, a lease and not a complete transfer of title"); *Diaz v. The Seathunder*, 191 F.Supp. 807, 817 (D.C. Md. 1961) (confirming status of bareboat charter where the charterer was responsible to maintain the vessel in a good state of repair, dry dock the vessel, allow the owner the right to inspect the vessel, and maintain insurance on the vessel). The Agreement expressly provides that "[n]one of the inspections shall unreasonably interfere with the use of the Vessel by [Port Richey Casino]." (Dkt. 73-5, p. 2).

Thus, Plaintiff's contention that Fish & Son "retain[ed] substantial control" of the vessel is contrary to the terms of the Agreement and simply without merit.

Alternatively, Plaintiff argues that *"upon information and belief"* the M/V Pink Lady II was "seized by the 'owner', Robert N. Fish, and returned to Maine prior to [the expiration of the charter period]." (Dkt. 74, p. 3) (emphasis added). Plaintiff provides no evidence in support of his contention and his speculation in this regard is insufficient to defeat summary judgment. Contrary to Plaintiff's suggestion, it is Plaintiff's burden, not Fish &Son's, to present evidence that creates a disputed issue of fact. *Celotex*, 477 U.S. at 323-24 (once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial). Simply put, without evidential support, Plaintiff's speculation that the owner of the M/V Pink Lady II terminated the Agreement and regained control of the vessel prior to March 19, 2005 is insufficient to create a disputed issue of fact. Accordingly, it is

**ORDERED AND ADJUDGED** that R.N. Fish & Son, Inc.'s Motion for Summary Judgment (Dkt. 73) is **GRANTED**. The Clerk is directed to enter judgment in R.N. Fish & Son, Inc.'s favor and against Plaintiff.

**DONE AND ORDERED** in Tampa, Florida, this 13th day of January, 2009.

JAMES D. WHITTEMORE
United States District Judge

COPIES FURNISHED TO:
Counsel of Record