UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID MORRIS,
    Plaintiff,
v.
                                                                     Case No.: 8:07-CV-845-T27-BTM

PARADISE OF PORT RICHEY,
INC.; PARADISE HOLDINGS OF
PORT RICHEY, INC., A.B.K.
ENTERPRISES, INC.; PORT RICHEY
CASINO, INC.; R.N. FISH & SON, INC.;
ROBERT N. FISH, an individual;
and the M/V PINK LADY II, in rem.
    Defendants.
                                              /

## DEFENDANTS PORT RICHEY CASINO INC., AND M/VPINK LADY II POST TRIAL BRIEF

      Plaintiff claims to have been injured from a wake by The Pink Lady II as it approached the Peanut on March 19, 2005 at approximately 5:10 p.m. The Pink Lady II had departed the Peanut at 4:50 p.m., prior to the arrival of the Perseverance. At the time of the injury, the Pink Lady was at Little Bank headed towards shore, approximately 6.7 miles distant from Mr. Morris. The Plaintiff bears the burden to prove that the wake was caused by the Pink Lady II. The Plaintiff has failed to satisfy this burden.

      According to Captain Matthews and Mate Jarshaw the vessel generating the wake was headed away from shore towards the Royal Casino I. The Plaintiffs trial testimony as well as his verified complaints and sworn interrogatories establish the offending wake was generated between 5:00 and 5:10 p.m. Inasmuch as the Pink Lady was tied along side the Royal Casino I at 4:35 p.m., as documented by the contemporaneous entries into the log book (Defense Exhibit 1), her arrival at the Peanut must have occurred several minutes prior to that time. The Pink Lady approached the Royal Casino I at least 20 minutes prior to the arrival of the Perseverance and therefore could not have been the vessel which caused the wake.

      Although Captain Matthews acknowledged a U.S. Coast Guard Report of Marine Accident, Injury or Death (Form CG2692)(46 CFR 4.05) should have been prepared, one was never produced by plaintiff in discovery or at trial nor was a complaint issued against Captain Rocamora or the Pink Lady II. The absence of a U.S.C.G. action against Captain Rocamora or the Pink Lady II is significant. A U.S. Coast Guard Marine

Casualty Report is mandatory for all maritime injuries. (46 CFR 4.05) Captain Matthews testified such a report would have been made by the Captain of the Horizons Edge. The report would have identified any offending vessel causing the casualty. The lack of an investigation or action against the Pink Lady's master corroborates the Pink Lady was not identified as the offender at the time of the incident.

The testimony and evidence presented by Port Richey Casino and the Pink Lady II has at all times been consistent. The Pink Lady II was not present at the time of the incident and did not cause the wake in question. This is confirmed by the log entries for the Pink Lady II made on the date of loss.( Defense Trial Exhibit 1)

However, the testimony proffered by the Plaintiff is contradictory, not only as to the identity of the vessel causing the wake but as to the facts and circumstances surrounding the loss. Memory of past events is fragile. The Plaintiff's witnesses could not agree upon the sea state (calm versus two to three feet); whether an order was given to Morris to move the gangway; the distance the Perseverance surged or the identification of the Pink Lady II as the offending vessel. The Plaintiff identified the Royal Casino I as the offending vessel in his initial Verified Complaint (D.E.1), Amended Complaint (D.E.22), Second Amended Complaint (D.E.33) and Answers to Interrogatories (D.E.75-4) filed before joining the Pink Lady II as a defendant. Moreover, even after joining the Pink Lady II as a party, the Plaintiff still identified the Royal Casino I as throwing the wake at deposition (Plaintiff Deposition P. 41, 52, 53, 54 and 14) and in his Interrogatory Responses filed in June 2008 (D.E.75-5). The defense is not dependent upon memory. The log and absence of a U.S. Coast Guard complaint against the Pink Lady are undisputed facts.

Even if the Court has question as to whether the Pink Lady II was the vessel which threw the wake, Pink Lady II is not automatically responsible for the injuries to the plaintiff. Strict liability does not apply to wake damage cases. A vessel whose wake causes injury to a passenger onboard another vessel is not presumptively liable for those injuries. *See Maxwell v. Hapag-Lloyd Akt., Hamburg,* 862 F.2d 767, 769 (9th Cir.1988) ("presumption of fault does not extend to personal injuries occurring as a result of a fall on properly moored vessels that do not themselves suffer damage") Rather, general negligence principles apply to personal injury claims of passenger in motorboat hit by wake of passing vessel. *Moran v. M/V GEORGIE MAY,* 164 F. Supp. 881, 885 (S.D.Fla.1958) As stated in *Turner v Pleasant,* 2004 WL 169801, 3 -4 (E.D.La.,2004):

> "**A vessel is only responsible for a wake that is unusual or unanticipated.** A moving vessel owes a duty of reasonable care to appreciate the reasonable effect of its wake and to take reasonable precautions to avoid creating unusual swells that may injure others. *Gregg,* 2000 WL 798493 at p. 4; *Maxwell v. Hapag-Lloyd Akt. Hamburg,* 862 F.2d 767, 769 (9th Cir.1988). **Only "unusual" swells or suction which cannot be reasonably anticipated furnish the basis for a claim**. *Id.* The injured plaintiff must prove by a preponderance of the evidence, that the passing vessel failed to exercise reasonable care that an ordinary reasonable and prudent person would have used under similar circumstances. *Gregg,* 2000 WL 798493 at p. 4; *Barthelemy v. Petroleum Company,* 1999 WL 65024 at *3 (E.D.La.1999)". See Also *Gregg v Weeks Marina Inc.,* 2000 WL 798493 (ED La)(emphasis added)

The Perseverance and the Horizon's Edge were certified by the U.S. Coast Guard to allow elderly passengers to traverse the gangway position between the two vessels in three to four feet seas. A two foot wave is well within the operational parameters of the vessel. Thus, it cannot be classified as extraordinary or unusual. This loss occurred on a Saturday afternoon. On weekends, with boat traffic on St. Martin's Reef (the Peanut) the likelihood of wakes from passing boats should have been anticipated and foreseeable. Properly secured, the Perseverance would not have moved or surged with three to four foot waves striking it.

Plaintiff was not injured when the initial wave impacted with the vessel. Although the Perseverance surged, the gangway did not hit Plaintiff or any bystander. It was only after Plaintiff started to withdraw the gangway in anticipation of the second wave that the incident occurred.

The proximate cause of the injury was not the two foot wave but a combination of: improperly securing the Perseverance to allow her to surge; the improvident order (if given) Captain Matthews and/or the failure of Captain Matthews to warn his crew of the wave despite having an opportunity to; and/or, failure to take evasive measures and/or the Plaintiff putting himself in the zone of danger.

The captain of the Perseverance knew a wake would be generated by the vessel he saw approaching but did not take any action to warn his crew. He did not anticipate the wake would be unusual or excessive and it was not. The only explanation consistent with good seamanship is that Captain Matthews (who claims to have seen the wake when generated) did not consider the wave to be unusual or likely to create a problem. If Captain Matthews did not find the wave to be out of the ordinary in advance of impact, then the offending vessel can not be charged with knowledge of generating an unusual wake.

The Plaintiff is not relieved of responsibility for his own injury just because he was following an order. It is axiomatic that a" seaman has a duty to exercise the degree of care for his own safety that a reasonable, or ordinarily prudent, seaman would exercise under similar circumstances. *See, e.g., Gautreux v. Scurlock Marine, Inc.,* 107 F.3d 331, 338 (5th Cir.1997); *In re Parish of Plaquemines,* 231 F.Supp.2d 506, 512 (E.D.La.2002)." *Augman v. Seacor Marine, L.L.C.* 2007 WL 2726064, 2 (E.D.La.) (E.D.La.,2007) Morris knew more waves were more likely to hit the boat and should have taken precautions. This is not to say that Morris should not have carried out Captain Matthews' orders. Rather, Morris should have done so with due regard for his safety. "Courts apply the doctrine of comparative fault to encourage reasonable care by seamen..."*Baucom v.Sisco Stevedoring, LLC* 560 F.Supp.2d 1181, 1208 (S.D.Ala.,2008) *citing Simeonoff v. Hiner,* 249 F.3d 883, 889 (9th Cir.2001)

That the Plaintiff was injured on the day in question is not in dispute. However, liability, the extent of the injury and the damages flowing therefrom are disputed. The Plaintiff treated with Dr. Swiggett, a board certified orthopedic surgeon, from March 30, 2005 though June 21, 2005 when he was released. The record evidence shows that at the time he was released by Dr. Swiggett, Mr. Morris had reach MMI with no residual disability and no impairment rating, He was 100% recovered. (Defense Exhibit 11) Plaintiff went back to work as an AB in August of 2005 and has been working as an able bodied seaman ever since. He has been recertified by the USCG as an able bodied seaman and has represented to the Coast Guard and his employers that he is not disabled, has no limitation in motion or strength and no conditions which would prevent him from performing his duties. (Defense Exhibit 16) Plaintiff has sought no medical treatment for the injuries sustained in March 2005 since he was released by Dr Swiggett. It is his treating physician's opinion that he is not a surgical candidate. (Swiggett Deposition p 20-21)

In February 2008 almost three years after the incident, Plaintiff was sent to Dr. Fererigos for an examination. The testimony of Dr. Fereigos based on that one examination and without subsequent testing or treatment is that Mr. Morris had chrondomalacia patella and may need knee surgery sooner than he otherwise would require it. The doctor was unable to testify with any certainty as to when this surgery might occur or as to Mr. Morris' age when he would have surgery. It might be at 60, 65 or 55 years of age. Similarly, the doctor was unable to testify that Mr. Morris would, within a reasonable degree of certainty, have arthroscopic surgery on the knee to

smooth the cartilage. Mr. Morris testified he is not treating with any medical practioner and has no plans for treatment or surgery. The damages sought for future surgery, either for a knee replacement or arthroscopic surgery are speculative and not substantiated by the evidence. The treating physician, who did not consider Mr. Morris as a candidate for surgery, is more objective than a doctor hired by a party for the sole purpose of giving trial testimony.

The economist, Ms. Eastridge testified Mr. Morris would sustain a loss of earning capacity as a result of knee replacement surgery and based her calculations on the assumption that surgery would occur when Mr. Morris was 50 years of age. However this assumption was not supported by the testimony of the doctor.  Ms. Eastridge economic prognostications are flawed.  They are not based on factual data but on unsupported assumptions; assuming when Morris would have surgery and his restricted work life after surgery.  The testimony as to future economic damage is rank speculation and cannot be the basis for an award of damages. When seeking a recovery for negligence the "law requires an aggrieved plaintiff to prove its damages with a reasonable degree of certainty." *Guyana Tel. & Tel. Co. v. Melbourne Int'l Communications, Ltd.,* 329 F.3d 1241, 1248 (11th Cir.2003). "[D]amages may not be determined by mere speculation or guess." *Maiz v. Virani,* 253 F.3d 641, 664 (11th Cir.2001); *see generally Systrends, Inc. v. Group 8760, LLC,* 959 So.2d 1052, 1076 (Ala.2006) ("It is true that damages may be awarded only where they are reasonably certain. Damages may not be based upon speculation.")". *Baucom v. Sisco Stevedoring*, LLC  560 F.Supp.2d 1181, 1205 (S.D.Ala.,2008). Plaintiff has failed to meet its burden with respect to establishing future lost earnings with a reasonable degree of certainty.

Plaintiff, having failed to meet his burden of proof as to liability or damages is not entitled to recovery as against the Pink Lady II or Port Richey Casino and judgment should be entered in favor of the Defendants

Respectfully submitted,

By: *s/Darlene M. Lidondici*
Darlene M. Lidondici, Esq.
Fla. Bar No.:  516521
Fertig & Gramling
200 S.E. Thirteenth St.
Ft. Lauderdale, FL 33316
(954)763-5020; (305)945-6250
(954)763-5412 fax
dml@fertig.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/*Darlene M. Lidondici*
**Darlene M. Lidondici, Esq.**
**Fla. Bar No.: 516521**
**Fertig & Gramling**
**200 S.E. Thirteenth St.**
**Ft. Lauderdale, FL 33316**
**(954)763-5020; (305)945-6250**
**(954)763-5412 fax**
**dml@fertig.com**

## MAILING LIST

Nicholas E. Karatinos, Esq.
18920 North Dale Mabry Highway
Suite 102,
Lutz, FL 33548
karatinos@verizon.net

.