UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID MORRIS,

                    Plaintiff,

v.                                        CASE NO: 8:07-CV-845-T-27TBM

PARADISE OF PORT RICHEY, INC.; *et al.*,

                    Defendants.
_____/

## ORDER

This case was tried before the court. The parties filed written final argument (Dkts. 117, 120). Having considered the arguments and the evidence, including the designated portions of Plaintiff's and Dr. Swiggett's depositions, the court FINDS and CONCLUDES:

Plaintiff filed this admiralty action against Paradise of Port Richey, Inc., Paradise Holdings of Port Richey, Inc., A.B.K. Enterprises, Inc., and the M/V Royal Casino I, seeking damages for injuries he suffered on March 19, 2005 while working as a seaman on the casino vessel M/V Horizon's Edge. The incident giving rise to Plaintiff's claim occurred in the Gulf of Mexico, approximately nine miles off Port Richey, Florida near a shallow area referred to as "the peanut." As the waters on the peanut are typically calmer than the open gulf, the peanut is used by casino boat operators to transfer passengers from shuttle vessels to the larger casino vessels.

On the day of the incident, Plaintiff boarded the shuttle Purserverance in Port Richey for the trip to the Horizon's Edge.[1] When she arrived, the Purserverance was moored to the starboard side of the Horizon's Edge. The crew secured an aluminum gangway between the two vessels which

---

[1] The parties differ in their spelling of the Purserverance.

enabled the Purserverance's passengers to transfer to the Horizon's Edge. When he was injured, Plaintiff was on the deck of the Horizon's Edge, tending to his assigned corner of the gangway.

Plaintiff alleges that the M/V Pink Lady II (Pink Lady), a shuttle used to ferry passengers to the casino vessel M/V Royal Casino, passed the Purserverance at an excessive speed, creating an unusually large wake, causing the Purserverance to surge and the gangway to shift. Plaintiff's leg was pinned between the gangway and the Horizon Edge's railing, causing severe pain and trauma. Plaintiff contends that the Captain of the Pink Lady failed to exercise reasonable care, violating several maritime "rules of the road," including neglect of precaution as a seaman, failing to observe the restriction on the Purserverance's and Horizon Edge's ability to maneuver, failing to maintain adequate lookouts, failing to operate at a safe speed, and failing to observe proper responsibility between vessels.[2]

Based on the evidence, the court finds that the Purserverance was securely moored to the Horizon's Edge when the incident occurred. Plaintiff was injured when a wake from a passing vessel caused the gangway between the Horizon's Edge and the Purserverance to shift. After the first wake struck the Purserverance, Captain Matthews ordered the crew tending the gangway to secure it. As Plaintiff reached to lift the gangway, a second wake of at least two feet struck the Purserverance, causing her to surge forward and aft, causing the gangway to shift. When he was injured, Plaintiff was performing his assigned duties as a seaman and following the orders of Captain Matthews.[3]

---

[2] Rules 2(a), 3(g), 5, 6(a), and 18(a), Navigational Rules of the Maritime Road

[3] Plaintiff could not, therefore, have been comparatively negligent. *Hall v. American Steamship Co.*, 688 F. 2d 1062, 1065 (6th Cir. 1982); *Williams v. Brasea, Inc.*, 497 F.2d 67, 73 (5th Cir.), *cert. denied*, 423 U.S. 906 (1974).

Although the witnesses' description of the sea state at the time of the incident varied somewhat, it is apparent that seas on the peanut were relatively calm at the time, with a slight chop. Although Captain Matthews did not see the wakes that actually hit the Purserverance, just before the incident, he saw a vessel he believed to be the Pink Lady outbound approximately 1000 feet from the Purserverance. He testified that he was a "little" concerned because the vessel was closer than normal, but does not recall alerting his crew. When the wake hit the Purserverance, Captain Matthews estimates that she surged back and forth 1 to 1½ feet. Based on how his vessel reacted, he believes the wake was a "couple of feet" high.

The Purserverance's Coast Guard Certificate of Inspection ("COI") authorized her to transfer passengers in 3 to 4 foot seas. Although a two foot wake is well within that COI, according to Captain Matthews, the wake was unusual as they were in calm water. Accepting his testimony as credible, the wake was therefore extraordinary and unusual under the circumstances, considering that the peanut is commonly used for the transfer of passengers to and from the casino boats, and the Purserverance and Horizon's Edge were engaged in that activity at the time. The vessel which caused the wake therefore did not exercise reasonable care under the circumstances. Her Captain failed to observe the inability of the Purserverance and Horizon's Edge to maneuver, operated the vessel at an unsafe speed under the circumstances, failed to observe responsibility as to the vessels in the peanut, and neglected to exercise precaution as a seaman, all in violation of the navigation rules of the road. Simply put, the vessel which caused the wake was operated too fast for the area, too close to the moored vessels, and without precaution for the reasonable effect of its wake on the moored vessels. As a result, the vessel threw an extraordinary and unusual wake without appreciating the effect of its wake and failing to take appropriate precautions under the circumstances.

General negligence principles apply in personal injury claims resulting from wakes from passing vessels. *Moran v/ M/V GEORGIE MAY*, 164 F.Supp. 881, 885 (S.D.Fla. 1958); *Maxwell v. Hapaq-Lloyd Akt., Hamburg,* 862 F.2d 767, 769 (9th Cir. 1988). A passing vessel owes a duty of reasonable care to appreciate the reasonable effect of its wake and to take reasonable precautions to avoid creating unusual swells that may cause injury. *Turner v. Pleasant,* 2004 WL 169801 (E.D. La. 2004; *Gregg v. Weeks Marina Inc.*, 2000 WL 798493 (E.D. La. 2000).[4]

Notwithstanding the court's finding that the offending vessel was negligently operated, Plaintiff has not carried his burden of proving by a preponderance of the evidence that the Pink Lady was the offending vessel. Although Captain Matthews testified that he observed the Pink Lady *outbound* as she passed the Purserverance, and Captain McKenzie likewise testified that he observed the Pink Lady *outbound* as she passed approximately 1/4 mile away, their testimony does not establish by the preponderance of the evidence that the Pink Lady threw the offending wake. Significantly, neither Captain Matthews nor Captain McKenzie actually saw the wake which hit the Purserverance. Further, as noted, both testified that the vessel they believed to have been the Pink Lady was *outbound*, heading toward the M/V Royal Casino. They were unequivocal in their observation that the Pink Lady was outbound when the incident occurred. Notwithstanding, the log books of the Pink Lady and the testimony of her Captain directly contradict their account of the incident. The Pink Lady's log entries and her Captain's testimony demonstrated that the Pink Lady was *inbound* and in fact several miles away from the peanut when the incident occurred.

The Captain's log of the Pink Lady, his testimony, the conspicuous absence of a Coast Guard

---

[4] There is no presumption of liability as to vessels throwing a wake which results in injury, absent damage to a vessel. *Hapaq-Lloyd Akt., Hamburg, supra.* According to Captain Matthews, the wakes did not damage his vessel and there is no evidence that the Horizon's Edge was damaged.

Report, together with conflicts in Plaintiff's account of the incident, give rise to substantial uncertainties and questions bearing on Plaintiff's evidence. First, the time of the incident is critical. By Plaintiff's account, he boarded the Purserverance at 3:45 p.m. bound for the Horizon's Edge. The Purserverance departed Port Richey at 4:15 p.m. for the 45 minute run to the Horizon's Edge. Once it arrived at the Horizon's Edge, it took about 5 minutes to tie off the Purserverance and 5 to 10 minutes for the passengers to disembark. Although Plaintiff believed the incident occurred at approximately 4:55, he acknowledged that it logically would have been closer to 5:15 p.m., considering the necessary travel time, the time it took to secure the Purserverance, and the time it took for the passengers to disembark. The log books of the Purserverance were not introduced into evidence, and according to Captain Matthews, could not be found.

According to the Pink Lady's log books, introduced as Defendant's Exhibit # 1, she departed Port Richey on March 19 at 3:30 p.m. and arrived at the M/V Royal Casino at 4:35 p.m. This entry demonstrates that the Pink Lady would have approached the M/V Royal Casino at least 20 minutes before the Purserverance arrived at the peanut. The Pink Lady departed from the M/V Royal Casino at 4:50 p.m. and arrived in Port Richey at 5:45 p.m. Accordingly, she would have been well past the Purserverance by 5:00 p.m. heading *inbound*. These log book entries directly contradict the testimony of Captains Matthews and McKenzie, a conflict which cannot be reconciled.

Captain Rocamora confirmed the accuracy of his log entries. He testified that it is 6.7 miles from the peanut to Little Bank. It is 3.5 miles from Little Bank to marker no. 1. It takes the Pink Lady approximately 15 minutes to travel from Little Bank to marker no. 1. As reflected in the log book, he made a sec. call at 5:25 p.m. at marker no. 1. It follows, therefore, that the Pink Lady was 6.7 miles from the peanut at Little Bank at approximately 5:10 p.m., when the incident resulting in

Plaintiff's injury occurred. Accordingly, the Pink Lady has not been shown to have caused the offending wake.

Further, Captain Matthews testified that the Captain of the Horizon's Edge should have reported the incident to the Coast Guard and a Coast Guard Report of Maritime Accident, Injury or Death should have been prepared, which would have identified the offending vessel. That report is required for all maritime injuries. 46 CFR 4.05. No such report was prepared to Captain Matthew's knowledge and one was not introduced into evidence. No action was taken against the Pink Lady or Captain Rocamora, corroborating that the Pink Lady was not identified as the offending vessel at the time of the incident.

Plaintiff's accounts of which vessel was the offending vessel have been inconsistent, detracting from the reliability of his testimony. In his verified complaint and amended complaints, Plaintiff alleged that the M/V Royal Casino I was the offending vessel. In those verified pleadings, Plaintiff alleged that at approximately 5:00 p.m. on March 19, 2005, the M/V Royal Casino I was traveling in the peanut at a high rate of speed and generated a wake of approximately two feet which struck the M/V Horizon's Edge and caused Plaintiff's injuries. (Dkts. 1, 22, 33). Additionally, in his interrogatory responses of August 10, 2007 and June 9, 2008, Plaintiff identified the M/V Royal Casino I as the vessel which caused the wake (Dkts. 75-4, 75-5). Contrary to these verified allegations and responses, Plaintiff testified at trial that the Pink Lady was the offending vessel.

Moreover, in his deposition, Plaintiff testified that on the day he was injured, he saw the Royal Casino pass the Horizon's Edge in her port side. He saw the "last couple of feet of the stern of the Royal Casino passing." According to Plaintiff, "[i]t was moving, it had a wake behind it." He was injured 30 seconds after the Royal Casino passed. When questioned about his allegation that the

Pink Lady threw the wake, he explained that he recalled seeing the Pink Lady pass the starboard side of the Purserverance only after Captain Matthews mentioned the Pink Lady during his deposition.

In sum, the evidence on liability is inconsistent and conflicting in material respects. The testimony of Plaintiff, Captain Matthews and Captain McKenzie has been directly contradicted by the log entries in the Pink Lady's Captain's log. The testimony of Captain Rocamora was credible and there is no evidence whatsoever that his log entries are not reliable or inaccurate. The Captain's log of the Purserverance has not been found. The absence of the mandatory Coast Guard Report of Marine Accident, Injury or Death which would have identified the offending vessel further diminishes Plaintiff's evidence that the Pink Lady was the offending vessel.

The court is unable to reconcile these conflicts in the evidence. Accordingly, Plaintiff has not met his burden of proving by a preponderance of the evidence that the Pink Lady was the offending vessel. *See Paynes v. Lee,* 487 F.2d 1307, 1308 (5th Cir. 1973)(plaintiff carries burden of proving case by a preponderance of the evidence and irreconcilable conflict in the evidence as to identification of defendant as perpetrator prevents plaintiff from meeting this requirement, as the "proofs in this case simply do not, as a matter of law, justify a finding of liability on the part of the defendant"). Accordingly, the court finds in favor of Defendants on liability. The Clerk is directed to enter judgment in favor of Defendants and close this case.

**DONE AND ORDERED** in this 22nd day of April, 2009.

JAMES D. WHITTEMORE
United States District Judge

COPIES FURNISHED TO:
Counsel of Record